1  KILPATRICK TOWNSEND & STOCKTON LLP
   MEHRNAZ BOROUMAND SMITH (SBN 197271)
2  GIA L. CINCONE (SBN 141668)
   Two Embarcadero Center, 8th Floor
3  San Francisco, California  94111
   Telephone:  (415) 576-0200
4  Facsimile:  (415) 576-0300
   Email:  mboroumand@kilpatricktownsend.com
5          gcincone@kilpatricktownsend.com

6  Attorneys for Plaintiff
   RHAPSODY INTERNATIONAL INC.
7

8                      UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

12  RHAPSODY INTERNATIONAL INC.,          Case No. 3:13-cv-05489-CRB

13                 Plaintiff,             **FIRST AMENDED COMPLAINT
                                          FOR TRADEMARK
14         v.                             INFRINGEMENT, DILUTION,
                                          CYBERSQUATTING, AND UNFAIR
15  RYAN LESTER and NAPSTER.FM, LLC,      COMPETITION (INJUNCTIVE
                                          RELIEF SOUGHT)**
16                 Defendants.
                                          **JURY TRIAL DEMAND**
17

18         Plaintiff Rhapsody International Inc. ("Rhapsody") complains against defendants Ryan Lester

19  and Napster.fm, LLC as follows:

20                           **PRELIMINARY STATEMENT**

21         1.      Rhapsody is the owner of the famous NAPSTER® trademark.  The original Napster

22  service is well known as a pioneer in the field of music file sharing services.  After its early years in

23  the peer-to-peer file sharing business, the Napster brand was acquired and put to use as the face of a

24  fully licensed subscription music service.  Napster's then-owners invested millions of dollars and

25  considerable energy to grow and protect the Napster brand as a legitimate force in the music industry.

26  The investment paid off, and over the next several years Napster acquired several hundred thousand

27  loyal subscribers.

28

2.          In 2011 Rhapsody acquired the Napster business, NAPSTER® trademarks and associated goodwill to integrate with its own paid music subscription service.  Rhapsody operates its own Rhapsody-branded music service in addition to its operations of the revitalized Napster service. Rhapsody takes pride in operating both licensed music services that respect the intellectual property rights of artists, publishers, and record labels.  Rhapsody has continued its use of the NAPSTER® mark and owns a number of federal trademark registrations for the mark, including several that have become incontestable.

3.          In April 2013, Rhapsody discovered that an individual named Ryan Lester, through his company Napster.fm, LLC, was operating a music service branded as "Napster.fm" (www.napster.fm) which, according to Lester, pulls its content from YouTube.  Rhapsody immediately contacted Lester and asked that he cease and desist his infringement of the NAPSTER® trademark.  After receiving Rhapsody's letter and accompanying trademark registrations, Lester agreed that Rhapsody's request was fair and rebranded his service "Peer.fm" (www.peer.fm).

4.          If Lester had adhered to the April 2013 arrangement, this case would not be necessary. But instead of trying to build a brand of his own, Lester demanded over three quarters of a million dollars from Rhapsody for his poached domain.  When that effort failed, Lester did an about-face, and contrary to his stated promise, he re-launched the Napster.fm site and resumed his infringing and diluting use of the NAPSTER® mark.  To make matters worse, Lester then tried to appropriate the goodwill associated with the NAPSTER® mark for himself by filing an application to register "Napster.fm."   Moreover, despite Rhapsody's unquestionable prior rights to the NAPSTER® trademark in the field of music services, Lester has opposed Rhapsody's pending application for NAPSTER® (which builds on Rhapsody's prior use and incontestable registration of its mark), claiming – without a trace of irony – that it will cause confusion with his nascent Napster.fm service.

5.          Thus, it has now become clear that Lester and Napster.fm, LLC intend to continue their infringing conduct.  Accordingly, Rhapsody is filing this complaint stating claims under federal and California law for violation of its trademark rights, unfair competition, and unfair business practices.

## JURISDICTION, VENUE AND INTRA-DISTRICT ASSIGNMENT

6.      Rhapsody's first, second, third, and fourth claims arise under the Trademark Act of 1946 (the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006 (15 U.S.C. §§ 1051, *et seq.*).  This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1121 (Lanham Act).  This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.  Because the parties are diverse in citizenship and more than $75,000 exclusive of costs and interest are at stake, this Court also has jurisdiction under 28 U.S.C. § 1332(a)(2) (diversity).  This Court has personal jurisdiction over the Defendants.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Rhapsody has offices in this district, Defendants transact business in this district, and a substantial part of the events giving rise to the claims asserted arose in this district.

8.      Intra-district assignment to any division of the Northern District is proper under Local Rule 3-2(c) and the Assignment Plan of this Court as an "Intellectual Property Action."

## PARTIES

9.      Rhapsody International Inc. is a Delaware corporation with offices at 500 3rd Street, #460, San Francisco, California 94107.  Rhapsody is the longest tenured provider of subscription streaming music service to members in this judicial district and throughout the United States.  Along with its predecessors, Rhapsody has been offering an all-you-can-eat on-demand music service for over a decade.  Rhapsody secures licenses and pays substantial royalties to hundreds of record labels and music publishers in order to offer its catalog of nearly twenty million songs to over one million subscribers.

10.     Rhapsody is informed and believes that defendant Ryan Lester is an individual with an address at 2041 Gallows Tree Court, Vienna, Virginia  22182.  Rhapsody is further informed and believes that Lester has authorized, directed, and/or actively participated in the wrongful conduct alleged herein.

11.     Rhapsody is informed and believes that defendant Napster.fm, LLC is a Virginia limited liability company with an address at 2041 Gallows Tree Court, Vienna, Virginia  22182, and

1  that Lester is the President and CEO of Napster.fm, LLC.  Rhapsody is further informed and believes

2  that Napster.fm, LLC has authorized, directed, and/or actively participated in the wrongful conduct

3  alleged herein.

4  <u>**FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS**</u>

5  **<u>The NAPSTER® Trademark</u>**

6      12.     Napster gained fame as a peer-to-peer file sharing service used primarily in the

7  distribution of music content.  Following years of legal disputes with rights holders, the old peer-to-

8  peer business was shut down and its intellectual property portfolio was sold in bankruptcy to Roxio

9  Inc. (which later changed its name to Napster Inc.).

10      13.     The new Napster continued to use the original brand name and logo, but the business

11  was restructured into a fully licensed and paid on-line music subscription service.  Napster Inc.

12  invested significant time, money, and energy to build a legitimate enterprise and strengthen the

13  Napster brand: filing several registrations for the NAPSTER® mark, negotiating hundreds of licenses

14  with rights holders, and generating thousands of paying subscribers.  These efforts were a success, and

15  in 2008 Best Buy, Inc. acquired the Napster business and brand for a reported $121 million.  For three

16  years, Best Buy continued to operate the Napster subscription business, pouring further resources into

17  strengthening the Napster brand and marks.  In 2011, Rhapsody acquired the NAPSTER® mark and

18  its associated goodwill in an asset purchase agreement with Best Buy.

19      14.     The NAPSTER® trademark has been federally registered since 2004, and has been

20  used continuously in interstate commerce at least since that date.  The NAPSTER® mark is in full

21  force and effect, valid and protectable, famous, and exclusively owned by Rhapsody.

22      15.     Rhapsody owns the following federal registrations for its NAPSTER® trademark:

| Trademark | Reg. No. / Date | Class / Products | Date of First Use |
|---|---|---|---|
| **NAPSTER** | 3,055,515 Jan. 31, 2006 | Class 9: Portable and handheld digital electronic devices for recording, organizing, transmitting, manipulating, and reviewing text, data, and audio files; computer software for use in organizing, transmitting, manipulating, and reviewing text, data, and audio files on portable and handheld digital electronic devices | Oct. 19, 2003 |

| NAPSTER | 3,054,773 Jan. 31, 2006 | Class 9: Computer software for use in organizing, transmitting, manipulating, and reviewing audio, video, and data files on portable and handheld digital electronic devices | Oct. 16, 2003 |
|---|---|---|---|
| NAPSTER | 2,841,431 May 11, 2004 | Class 9: computer software for the transmission of audio, graphics, text, and data over communications networks; computer software for the streaming transmission of audio, video, graphics, text and data over communication networks; computer software for storage of audio, video, graphics, text and data on communications networks users; computer software for secure, encrypted electronic transfer of audio, video, graphics and data over communications networks; Class 42: licensing of intellectual property, computer services, namely, providing customized webpages featuring user-defined information, which includes search engines and online web links to news, weather, current events, reference materials, and customized email messages, all in a wide range of user-defined fields; computer services, namely, providing search engines for obtaining data via electronic communications network | Oct. 29, 2003 |
| NAPSTER | 2,843,786 May 18, 2004 | Class 35: Product merchandising; licensing of computer software and of entertainment products and services; retail store services featuring entertainment products and apparel; retail store services provided via communications networks featuring entertainment products and apparel; Class 38: Electronic transmission of audio and video files via communications networks; providing electronic bulletin boards; chat rooms and community for a transmission of messages among users concerning music, news, current events, entertainment and arts and leisure; Class 41: Providing databases and directories in the fields of music, video, radio, news, games, cultural events, entertainment, and arts and leisure via communications networks; providing information, audio, video, graphics, text and other multimedia content in the fields of music, video, radio, news, games, cultural events, entertainment, and arts and leisure via communications networks; music publishing services; publishing of text, graphic, audio and | Oct. 29, 2003 |

| | | | video works via communications networks; matching users for the transfer of music, video, and audio recordings via communications networks; Class 42: Licensing of intellectual property; providing search engines for obtaining data via communications networks | |
|---|---|---|---|---|
| | napster | 2,843,405 May 18, 2004 | Class 9: Computer software for the transmission of audio, graphics, text, and data over communications networks; computer software for the streaming transmission of audio, video, graphics, text and data over communications networks; computer storage to enable communications among computer or communications network users; computer software for secure, encrypted electronic transfer of audio, video, graphics and data over communications networks; Class 35: Product merchandising; licensing of computer software; retail store services featuring entertainment products and apparel; retail store services provided via communications networks featuring entertainment products and apparel; Class 38: Transmission of audio and video files via communications networks; providing electronic bulletin boards, chat rooms and community for a for the transmission of messages among users concerning music, news, current events, entertainment and arts and leisure; Class 41: Providing databases and directories in the fields of music, video, radio, news, games, cultural events, entertainment, and arts and leisure via communications networks; providing information, audio, video, graphics, text and other multimedia content in the fields of music, video, radio, news, games, cultural events, entertainment, and arts and leisure via communications networks; music publishing services; publishing of text, graphic, audio and video works via communications networks; matching users for the transfer of music, video, and audio recordings via communications networks; Class 42: Licensing of intellectual property; providing search engines for obtaining data via communications networks | Oct. 29, 2003 |

| NAPSTERLINKS | 3,309,551<br>Oct. 9, 2007 | Class 9: Computer software, namely, computer software to enable the transmission of audio, graphics, text, and data over communications networks; computer software for the streaming transmission of audio, video, graphics, text and data over communication networks via hyperlinks | May 1, 2006 |
|---|---|---|---|

As covered by these registrations, the NAPSTER® mark is valid, famous, and owned by Rhapsody. Registration Nos. 3,054,773, 2,843,786, and 2,843,405 are incontestable.  Copies of the registrations are attached as Exhibit A and incorporated by reference.

16.     Rhapsody also owns two trademark applications for NAPSTER® (Serial Numbers 78/431,602 and 85/804,778).  In addition, Rhapsody owns over 200 domain names worldwide that incorporate the NAPSTER® mark.  Rhapsody maintains these domain registrations and continually purchases domains worldwide that incorporate NAPSTER®.

17.     Since its acquisition of the NAPSTER® mark, Rhapsody has continuously used the mark in the United States in connection with its products and services.  Rhapsody actively uses the NAPSTER® and Napster Cat Head Logo trademarks on its website and in its communications with third parties.  In addition to its domestic use, Rhapsody has been dramatically expanding its use of the NAPSTER® mark internationally, operating the Napster service in over twenty countries throughout Europe and Latin America.

18.     Rhapsody also licenses certain uses of the NAPSTER® mark and actively policies unlicensed uses.  Rhapsody has been approached by several third parties who have requested a license to incorporate the NAPSTER® mark into various works including television shows, books, and other educational materials. Rhapsody evaluates each request to license the NAPSTER® mark on a case-by-case basis.  When third parties have tried to use NAPSTER® or confusingly similar marks without Rhapsody's consent, Rhapsody has diligently enforced its rights through cease-and-desist letters and takedown requests.

19.     For years prior to the events giving rise to this Complaint and continuing to the present, Rhapsody annually has spent significant amounts of time, money, and effort advertising and promoting the products and services on which its NAPSTER® trademark is used.  Through its

1    acquisition of and investment in the NAPSTER® trademark, Rhapsody has gained valuable goodwill

2    in the mark.

3           20.    As a result of use and promotion of the NAPSTER® trademark, the mark is famous

4    and is recognized around the world and throughout the United States and associated by consumers

5    with Rhapsody and its products and services.

6           21.    Rhapsody's NAPSTER® trademark became famous prior to any use of the mark by

7    Defendants.

8    **Defendants' Use of the NAPSTER® Trademark**

9           22.    In or about April 2013, Rhapsody became aware that Lester had launched a website at

10   www.napster.fm and was operating a free web-based music streaming service called Napster.fm.  The

11   Napster.fm website advertises its services as "Napster reimagined for the modern Web" and points out

12   "a few features that make Napster.fm better than Napster OG [original gangsta]."  The FAQ portion of

13   Napster.fm states that the free service is "essentially just grabbing existing content on YouTube"  and

14   implies that it takes advantage of "minor inefficiencies in YouTube's piracy-detection system" to

15   provide the content.  Images of Lester's current use of Napster.fm are attached as Exhibit B.

16          23.    The registrar of the domain name Napster.fm lists the "Registrant Name," "Admin

17   Name," and "Tech Name" as Ryan Lester and the "Registrant Organization," "Admin Organization,"

18   and "Tech Organization" as Napster.fm, LLC.  On information and belief, Lester is the President and

19   CEO of Napster.fm, LLC.

20          24.    On April 14, 2013, the Napster.fm website was featured in an article on the prominent

21   technology blog TechCrunch (http://techcrunch.com), a site which regularly follows developments in

22   the digital music business.  In a perfect illustration of the likelihood of confusion caused by

23   Defendants' conduct, even the sophisticated technology blog included the NAPSTER® mark and an

24   image of Rhapsody's registered Napster Cat Head Logo at the bottom of the article, suggesting an

25   affiliation between Napster.fm and the famous Napster brand.

26          25.    A follow-up article on TechCrunch dated April 21, 2013, stated, "The name alone got

27   our attention, and after using it, there were a few features that were reminiscent of its predecessor,

28   which made it even cooler."  In an interview included in this article, Lester stated that he had over

100,000 visitors to the site and expressed the belief that "quite a few people" use his service "out of nostalgia for the old Napster days."  The article concludes, "Don't be fooled though, the service isn't paying for the music its [sic] streaming, and neither are the users, which will definitely make it a target for shutdown."

26.    TechCrunch was not the only media outlet to be tripped up by Defendants' conduct. An article about the Napster.fm website on www.mobilemag.com dated April 15, 2013, is titled "Napster returns as Napster.fm!" and also includes an image of the Napster Cat Head Logo.

27.    Within days of becoming aware of the infringing service, Rhapsody sent a cease and desist letter to Lester demanding that he stop using Napster.fm as a domain name, name, or trademark. In the letter, Rhapsody explained its ownership rights in the NAPSTER® mark and included copies of its federal trademark registrations for its marks.  Lester responded by email that Rhapsody's terms "sound[ed] fair," and that "[a]ccordingly, I have publicly rebranded *my service* from Napster.fm to Peer.fm *and will cease any further claim to the former name/mark*" (emphasis added).  Lester further noted that the copyright notice appearing on the website still read Napster.fm "as that is still technically the name of *my company*," but offered to update Rhapsody's counsel "once this has been amended by the state" (emphasis added).  Rhapsody's letter and Lester's response are attached as Exhibits C and D.

28.    In a later interview, Lester was asked whether he regretted naming the project after Napster.  He responded, "*Definitely don't regret it at all; I don't think there's any way it would have grabbed the same level of initial attention without the Napster association*" (emphasis added).

29.    As part of Lester's original agreement to rebrand his service and change his domain name, he indicated that the Napster.fm site was redirecting web traffic to peer.fm and he would like to continue that practice for another month to ease the transition before potentially selling the domain to Rhapsody.  In appreciation for Lester's prompt rebranding, Rhapsody replied that it was amenable to the short-term use of the Napster.fm redirect but that it was not interested in paying a significant amount for the domain (since Rhapsody is already the owner of www.napster.com and dozens of similar iterations).

30.     After a few attempts to determine if Lester would sell the domain for a reasonable price, Lester's counsel finally responded by letter dated August 22, 2013.  The letter stated that counsel "have discussed this matter with our client, Mr. Ryan Lester" and proposed that "Mr. Lester [would] transfer his rights in the Napster.fm domain to Rhapsody International Inc. for a purchase amount of $775,000.00 plus attorneys fees and other associated fees."  In return, Lester would agree to "*change his company name; immediately stop using NAPSTER.FM as a domain name, name or mark; permanently refrain from use [sic] any domain name, name or mark that incorporates NAPSTER, or any confusingly similar variation thereof including but not limited to any and all use of NAPSTER.FM*" (emphasis added).  The demand was sent by counsel purporting to act on behalf of Lester and referred to Napster.fm, LLC as "[Lester's] company."  A copy of the letter is attached hereto as Exhibit E.  Thus, Lester and his company, Napster.fm, LLC, offered to transfer, sell or otherwise assign the infringing domain name to Rhapsody for financial gain.  Defendants' registration of, use of, and/or trafficking in a domain name that infringes and incorporates Rhapsody's trademark constitutes a bad faith effort to unfairly reap profits from Rhapsody's trademark.

31.     On September 19, 2013, Lester filed Trademark Application Serial No. 86/069,735 for NAPSTER.FM in Class 38 for "Subscription audio and video broadcasting via electronic communication networks, local and global computer networks and wireless communication networks; audio broadcasting, namely, broadcasting music, concerts, and radio programs via electronic communication networks, local and global computer networks and wireless communication networks; streaming of audio content via electronic communication networks, local and global computer networks and wireless communication networks; webcasting services; providing on-line chat rooms and electronic bulletin boards for transmission of messages, and audio and video playlists among users."  The trademark application, a copy of which is attached as Exhibit F, listed the applicant as Ryan Lester acting individually.  The application claimed a first use date of March 25, 2012, and first use in commerce of November 29, 2012.

32.     On January 7, 2014, the U.S. Patent and Trademark Office issued an Office Action with regard to Lester's trademark application, refusing to register NAPSTER.FM based on likelihood of confusion with Rhapsody's registrations for its NAPSTER trademark.  A copy of the Office Action

1    is attached as Exhibit G.  Rhapsody intends to oppose Lester's application, if and when it passes to

2    publication.

3         33.    On September 25, 2013 – despite the fact that Rhapsody's use and registration of its

4    NAPSTER® trademark preceded his use of Napster.fm – Lester filed an opposition to Rhapsody's

5    Trademark Application Serial No. 85/804,778 for the NAPSTER® mark.  The opposition proceeding,

6    which was filed by Lester acting individually, is now pending at the Trademark Trial and Appeal

7    Board (Opp. No. 91212665).  In his Notice of Opposition, Lester alleged that he was the owner of the

8    Napster.fm trademark and that Rhapsody's use of its famous NAPSTER® mark will confuse

9    customers about *his* mark, stating:  "[Rhapsody's] NAPSTER mark so resembles [Lester's]

10   NAPSTER.FM mark and the goods/services thereof as to likely [sic], when used in connection with

11   the services set forth in [Rhapsody's] Application, to cause confusion, or to cause mistake, or to

12   deceive."

13        34.    Most recently, in direct contradiction to his promise and without warning or discussion,

14   Lester re-launched the infringing Napster.fm service at www.napster.fm.  On information and belief,

15   Defendants are continuing to use Napster.fm as a domain name and business name for a free, open

16   source music streaming service.

17        35.    Consumers in this judicial district are able to access and use the Napster.fm service.  In

18   particular, consumers in this judicial district are able to create accounts on Napster.fm and use those

19   accounts to search for and listen to music and create music libraries.

20        36.    Defendants' use and potential registration of Napster.fm has caused and/or will cause a

21   likelihood of confusion among consumers regarding the source of the Napster.fm music streaming

22   service and whether Rhapsody has sponsored, authorized or is affiliated with the Napster.fm website

23   or its service.

24        37.    Defendants' actions have caused and will cause Rhapsody irreparable harm for which

25   money damages and other remedies are inadequate.  Unless Defendants are restrained by this Court,

26   they will continue and/or expand their illegal activities and otherwise continue to cause great and

27   irreparable damage and injury to Rhapsody by, among other things:

28             a.    Depriving Rhapsody of its statutory rights to use and control use of its

1      NAPSTER® trademark;

2          b.      Creating a likelihood of confusion, mistake and deception among consumers

3                  and the trade as to the source of his infringing service;

4          c.      Causing the public falsely to associate Rhapsody with Defendants and/or their

5                  service, or vice versa;

6          d.      Causing incalculable and irreparable damage to Rhapsody's goodwill and

7                  diluting the capacity of its famous NAPSTER® trademark to differentiate its

8                  services from those of its competitors;

9          e.      Tarnishing the famous NAPSTER® trademark; and

10         f.      Causing Rhapsody to lose sales of its genuine NAPSTER® products and

11                 services.

12     38.     Accordingly, in addition to other relief sought, Rhapsody is entitled to preliminary and

13  permanent injunctive relief against Lester, Napster.fm, LLC, and all persons acting in concert with

14  them.

15                              **FIRST CLAIM**
                **FEDERAL TRADEMARK INFRINGEMENT**
16                 **(15 U.S.C. §§ 1114-1117; Lanham Act § 32)**

17     39.     Rhapsody realleges and incorporates by reference each of the allegations contained in

18  paragraphs 1 through 38 of this Complaint.

19     40.     Defendants have used, in connection with the sale, offering for sale, distribution or

20  advertising of their music streaming service, words and symbols that infringe upon Rhapsody's

21  registered NAPSTER® trademark.

22     41.     These acts of trademark infringement have been committed with the intent to cause

23  confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

24     42.     As a direct and proximate result of Defendants' activities, Rhapsody is entitled to

25  recover Defendants' unlawful profits and Rhapsody's substantial damages under 15 U.S.C. § 1117(a).

26     43.     Defendants' trademark infringement is an exceptional case and was intentional,

27  entitling Rhapsody to treble the amount of its damages and Defendants' profits, and to an award of

28  attorneys' fees under 15 U.S.C. §§ 1117(a) and 1117(b).  Alternatively, Rhapsody is entitled to the

1   maximum statutory damages allowed under 15 U.S.C. §§ 1117(c).  Rhapsody will make its election at

2   the appropriate time before final judgment.

3       44.      Rhapsody will suffer irreparable harm as a result of Defendants' infringement of

4   Rhapsody's trademark and is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

5                               **SECOND CLAIM**
6               **(False Designation of Origin and False Description)**
                **(15 U.S.C. § 1125(a); Lanham Act § 43(a))**
7

8       45.      Rhapsody realleges and incorporates by reference each of the allegations contained in

9   paragraphs 1 through 44 of this Complaint.

10      46.      Defendants' use of symbols or devices, and a combination thereof, tends falsely to

11  describe his services within the meaning of 15 U.S.C. § 1125(a)(1).  Defendants' conduct is likely to

12  cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association,

13  origin, sponsorship or approval of his infringing services to the detriment of Rhapsody and in

14  violation of 15 U.S.C. § 1125(a)(1).

15      47.      As a direct and proximate result of Defendants' activities, Rhapsody is entitled to

16  recover Defendants' unlawful profits and Rhapsody's substantial damages under 15 U.S.C. § 1117(a).

17      48.      Defendants' unfair competition is an exceptional case and was intentional, entitling

18  Rhapsody to treble the amount of its damages and Defendants' profits, and to an award of attorneys'

19  fees under 15 U.S.C. § 1117(a) and 1117(b).  Alternatively, Rhapsody is entitled to the maximum

20  statutory damages allowed under 15 U.S.C. § 1117(c).  Rhapsody will make its election at the

21  appropriate time before final judgment.

22      49.      Rhapsody will suffer irreparable harm as a result of Defendants' infringement of

23  Rhapsody's trademark and is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

24                               **THIRD CLAIM**
                 **FEDERAL DILUTION OF FAMOUS MARK**
25               **(Trademark Dilution Revision Act of 2006)**
                 **(15 U.S.C. § 1125(c); Lanham Act § 43(c))**
26

27      50.      Rhapsody realleges and incorporates by reference each of the allegations contained in

28  paragraphs 1 through 49 of this Complaint.

51.     Rhapsody's NAPSTER® trademark is distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), and was distinctive and famous before any use by Defendants of Napster.fm.

52.     Defendants' conduct is likely to cause dilution of Rhapsody's NAPSTER® trademark by diminishing its distinctiveness and/or tarnishing its reputation in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

53.     As a direct and proximate result of Defendants' activities, Rhapsody is entitled to recover Defendants' unlawful profits and Rhapsody's substantial damages under 15 U.S.C. § 1117(a).

54.     Rhapsody will suffer irreparable harm as a result of Defendants' dilution of Rhapsody's trademark and is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c).

### FOURTH CLAIM
### FEDERAL ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT
### (15 U.S.C. § 1125(d); Lanham Act § 43(d))

55.     Rhapsody realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 54 of this Complaint.

56.     Defendants have registered, trafficked in, and/or used a domain name that is identical to, confusingly similar to, and dilutive of Rhapsody's trademark.

57.     Rhapsody's NAPSTER® trademark was distinctive and famous long before and at the time of Defendants' registration of the infringing domain name Napster.fm.

58.     Defendants possess a bad faith intent to profit from Rhapsody's trademark.   That intent is evident from, among other things, the facts that (a) Defendants have no rights in the trademark they are using; (b) Defendants did not have prior use of the trademark in connection with any bona fide offering of goods and services; (c) Rhapsody's trademark at all times relevant to this Complaint has been distinctive and famous and this was known to Defendants; (d) Defendants' use of the infringing domain name is not a fair use; (e) Defendants intend to divert consumers from Rhapsody's online location to a site accessible under the infringing domain name that could harm the goodwill represented by Rhapsody's mark, either for commercial or other gain or with the intent to tarnish or disparage Rhapsody's mark by creating a likelihood of confusion; and (f) Defendants are holding

1   Rhapsody hostage by offering to transfer, sell, or otherwise assign the infringing domain name to

2   Rhapsody for financial gain.

3       59.     Accordingly, Rhapsody is entitled to injunctive relief, damages, and other remedies as

4   provided by law.

5                           **FIFTH CLAIM**
                **CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT**

6

7       60.     Rhapsody realleges and incorporates by reference each of the allegations contained in

8   paragraphs 1 through 60 of this Complaint.

9       61.     Rhapsody owns protectable rights in its NAPSTER® trademark at common law.

10      62.     Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive as to

11  the source of services offered by Defendants or as to affiliation, connection, association, sponsorship,

12  or approval of such services, and constitutes infringement of Rhapsody's trademark at common law.

13      63.     Defendants infringed Rhapsody's trademark with knowledge and intent to cause

14  confusion, mistake, or deception.

15      64.     Defendants' conduct is aggravated by that kind of willfulness, wantonness, malice and

16  conscious indifference to the rights and welfare of Rhapsody for which California law allows the

17  imposition of exemplary damages.

18      65.     As a direct and proximate result of Defendants' activities, Rhapsody has suffered

19  substantial damage.

20      66.     Pursuant to California common law, Rhapsody is entitled to injunctive relief and

21  compensatory and punitive damages.

22                          **SIXTH CLAIM**
                **CALIFORNIA UNFAIR COMPETITION**
                **(Cal. Bus. & Prof. Code § 17200)**

23

24      67.     Rhapsody realleges and incorporates by reference each of the allegations contained in

25  paragraphs 1 through 67 of this Complaint.

26      68.     Defendants' conduct as alleged in this Complaint constitutes "unlawful, unfair or

27  fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within

28  the meaning of California Business & Professions Code § 17200.

69.     As a consequence of Defendants' actions, Rhapsody is entitled to injunctive relief preventing the conduct alleged in this Complaint.

## PRAYER FOR JUDGMENT

WHEREFORE, Rhapsody prays that this Court grant it the following relief:

70.     Adjudge that Rhapsody's NAPSTER® trademark has been infringed by Defendants in violation of Rhapsody's rights under 15 U.S.C. § 1114, common law, and/or California law;

71.     Adjudge that Defendants have competed unfairly with Rhapsody in violation of Rhapsody's rights under 15 U.S.C. § 1125(a), common law, and/or California law;

72.     Adjudge that Defendants' activities are likely to dilute Rhapsody's famous NAPSTER® trademark in violation of 15 U.S.C. § 1125(c);

73.     Adjudge that Defendants have engaged in cyberpiracy in violation of 15 U.S.C. § 1125(d);

74.     Adjudge that Defendants and their agents, employees, attorneys, successors, assigns, affiliates, and joint venturers and any person(s) in active concert or participation with them, and/or any person(s) acting for, with, by, through or under them, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

     a.     Selling, offering for sale, advertising, or promoting any services that display any words or symbols that so resemble Rhapsody's NAPSTER® trademark as to be likely to cause confusion, mistake or deception, on or in connection with any service that is not authorized by or for Rhapsody, including without limitation any service that is offered in connection with the Napster.fm domain name or business name or any other approximation of Rhapsody's trademark;

     b.     Using any word, term, name, symbol, device or combination thereof that causes or is likely to cause confusion, mistake or deception as to the affiliation or association of Defendants or their services with Rhapsody or as to the origin of Defendants' services, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertising;

     c.     Further infringing the rights of Rhapsody in and to its NAPSTER® trademark, or otherwise damaging Rhapsody's goodwill or business reputation;

     d.     Further diluting the famous NAPSTER® trademark;

1        e.       Otherwise competing unfairly with Rhapsody in any manner; and

2        f.        Continuing to perform in any manner whatsoever any of the other acts

3    complained of in this Complaint;

4        75.     Adjudge that Defendants, within thirty (30) days after service of the Court's judgment,

5    be required to file with this Court and serve upon Rhapsody's counsel a written report under oath

6    setting forth in detail the manner in which they have complied with the judgment;

7        76.     Adjudge that Defendants, within thirty (30) days after service of the Court's judgment,

8    be required to transfer the domain name Napster.fm to Rhapsody;

9        77.     Adjudge that Rhapsody recover from Defendants its damages and lost profits, and

10   Defendants' profits, in an amount to be proven at trial, as well as punitive damages under California

11   law;

12       78.     Adjudge that Defendants be required to account for any profits that are attributable to

13   their illegal acts, and that Rhapsody be awarded (1) Defendants' profits and (2) all damages sustained

14   by Rhapsody, under 15 U.S.C. § 1117, plus prejudgment interest;

15       79.     Adjudge that the amounts awarded to Rhapsody pursuant to 15 U.S.C. § 1117 shall be

16   trebled;

17       80.     Order an accounting of and impose a constructive trust on all of Defendants' funds and

18   assets that arise out of their infringing activities;

19       81.     Adjudge that Rhapsody be awarded its costs and disbursements incurred in connection

20   with this action, including Rhapsody's reasonable attorneys' fees and investigative expenses; and

21       82.     Adjudge that all such other relief be awarded to Rhapsody as this Court deems just and

22   proper.

23   DATED: January 24, 2014         Respectfully submitted,

24                            KILPATRICK TOWNSEND & STOCKTON LLP

25

26                          By:   */s/ Mehrnaz Boroumand Smith*
                                 MEHRNAZ BOROUMAND SMITH

27                          Attorneys for Plaintiff
                            RHAPSODY INTERNATIONAL INC.

28

1

## **DEMAND FOR JURY TRIAL**

2

Rhapsody demands that this action be tried to a jury.

3

4   DATED: January 24, 2014          Respectfully submitted,

5                                    KILPATRICK TOWNSEND & STOCKTON LLP

6
                                     By:   ___/s/ Mehrnaz Boroumand Smith_____
7                                          MEHRNAZ BOROUMAND SMITH

8                                    Attorneys for Plaintiff
                                     RHAPSODY INTERNATIONAL INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28