**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHAPSODY INTERNATIONAL INC., <br><br> Plaintiff, <br><br> v. <br><br> RYAN LESTER & NAPSTER.FM, LLC, <br><br> Defendants | No. C 13-05489 CRB <br><br> **ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER** |

Plaintiff Rhapsody International, Inc. ("Plaintiff") brought suit against Ryan Lester and Napster.fm, LLC (collectively "Defendants"), alleging trademark infringement, dilution, cybersquatting, and unfair competition. Lester now moves to dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim, lack of personal jurisdiction, and improper venue. Alternatively, Lester moves to transfer the action to the Eastern District of Virginia. Napster.fm, LLC also moves to dismiss for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer the action to the Eastern District of Virginia.[1] The Court DENIES Defendants' motions.

//

//

---

[1] At oral argument, Plaintiff's counsel argued that Napster.fm, LLC's motion was brought on the same grounds as Lester's motion, and Defendants' counsel did not dispute this argument. The Court also finds the motions to be nearly identical, for all practical purposes. Accordingly, the motions are addressed jointly unless otherwise noted.

## I. BACKGROUND

### A. The Napster Mark

Plaintiff is the owner of the famous Napster trademark. See FAC ¶ 1 (dkt. 21). The Napster name gained fame as a peer-to-peer file sharing service for the free distribution of music. Id. ¶ 12. Following years of legal disputes, the original service was shut down and its intellectual property rights were sold to Roxio Inc., which became Napster Inc. Id. ¶ 12. Although the new Napster continued to use the original brand name and logo, the new owners restructured the business into a fully licensed and paid online music subscription service. Id. ¶ 13. Napster Inc. invested significant time and money to create a legitimate business and strengthen the Napster brand by "filing several registrations for the Napster mark, negotiating hundreds of licenses with rights holders, and generating thousands of paying subscribers." Id. In 2008, Best Buy acquired the Napster business for a reported $121 million. Id. In 2011, Plaintiff acquired the Napster mark and its associated goodwill from Best Buy. Id.

The Napster trademark has been federally registered since 2004 and has been used continuously in interstate commerce since that time. Id. ¶ 14. Plaintiff owns six federal registrations of the Napster mark, three of which are incontestable. Id. ¶¶ 14-15. Plaintiff also owns two trademark applications for Napster, and owns over 200 domain names worldwide that incorporate the Napster mark. Id. ¶ 16. Since its acquisition of the Napster mark, Plaintiff has actively and continuously used the mark in the United States, and operates the Napster service in over twenty countries throughout Europe and Latin America. Id. ¶ 17. The Napster mark is famous throughout the world and is associated by consumers with Plaintiff and its products and services. Id. ¶ 20. Plaintiff's Napster trademark became famous prior to any use of the mark by Defendants. Id. ¶ 21.

### B. Defendants' Use of the Napster Mark

Around April 2013, Plaintiff became aware that Defendants had launched a website at www.napster.fm and was operating a free online music streaming service called Napster.fm. Id. ¶ 22. The registrar of the domain name Napster.fm lists the "Registrant Name," "Admin

2

Name," and "Tech Name" as Ryan Lester, and the "Registrant Organization," "Admin Organization," and "Tech Organization" as Napster.fm, LLC. Id. ¶ 23. Lester is the President and CEO of Napster.fm, LLC. Id. The Napster.fm website advertises its services as "Napster reimagined for the modern Web." Id. ¶ 22.

Within days of becoming aware of the website, Plaintiff sent Lester a cease and desist letter explaining Plaintiff's ownership rights in the Napster mark and demanding that Lester stop using Napster.fm as a domain name, name, or trademark. Id. ¶ 27. Lester responded by email that Plaintiff's demand "sound[ed] fair" and that "I have publicly rebranded my service from Napster.fm to Peer.fm and will cease any further claim to the former name/mark." Id. He also explained that the copyright notice on the website still read Napster.fm "as that is still technically the name of my company," but that he would update Plaintiff when the name had been amended by the state. Id.

As part of Lester's agreement to change his domain name and rebrand his service, he requested that he be permitted to redirect web traffic from Napster.fm to Peer.fm for a month to ease the transition before potentially selling the domain name to Plaintiff. Id. ¶ 29. Plaintiff replied that it was amenable to the short-term use of Napster.fm for redirect purposes, but that it was not interested in paying a large sum for the domain name. Id. After attempts to determine a reasonable purchase price, on August 22, 2013, Defendants' counsel wrote that Lester would "transfer his rights in the Napster.fm domain to [Plaintiff] for a purchase amount of $775,000.00 plus attorneys fees and other associated fees." Id. ¶ 30. Plaintiff alleges that Defendants' offer to assign the infringing domain name for financial gain "constitutes a bad faith effort to unfairly reap profits" from Plaintiff's trademark. Id.

On September 19, 2013, Defendants filed with the U.S. Patent and Trademark Office ("PTO") Trademark Application Serial No. 86/069,735 for Napster.fm. Id. ¶ 31. The Trademark Application listed the applicant as Lester acting individually, a first use date of March 25, 2012, and a first use in commerce date of November 29, 2012. Id. On September 25, 2013, Lester, acting individually, filed an opposition to Plaintiff's preexisting Trademark Application Serial No. 85/804,778 for the Napster mark, alleging that he was the owner of

the Napster.fm trademark and that Plaintiff's use of its famous Napster mark will confuse consumers about his mark.[2]  Id. ¶ 33.  Plaintiff alleges that Defendants re-launched the infringing Napster.fm service at www.napster.fm and continue to use Napster.fm as a domain name and business for a free, open source music streaming service.  Id. ¶ 34.

### C. Procedural History

Plaintiff filed suit against Lester on November 26, 2013.  See generally Complaint (dkt. 1).  On December 31, 2013, Lester moved to dismiss or, in the alternative, to transfer.  See generally Lester's Motion to Dismiss ("MTD") (dkt. 7).  On January 24, 2014, Plaintiff amended its complaint to include Napster.fm, LLC as a defendant, and alleged causes of action for (1) federal trademark infringement; (2) false designation of origin and false description; (3) federal dilution of a famous mark; (4) Federal Anti-Cybersquatting Consumer Protection Act; (5) California common law trademark infringement; and (6) California unfair competition.  See generally FAC.  On February 20, 2014, Napster.fm, LLC appeared and filed its Motion to Dismiss, or, in the alternative, Motion to Transfer.  See generally Napster.fm, LLC's MTD (dkt. 37).

## II. LEGAL STANDARD

### A. Dismissal Under Rule 12(b)(6) for Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  "Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 668 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The determination of whether a complaint states a plausible claim

---

[2] On January 7, 2014, the PTO issued an Office Action regarding Defendants' trademark application, refusing to register Napster.fm based on a likelihood of confusion with Plaintiff's registrations for its Napster trademark.  See FAC ¶ 32, Exh. G.

4

is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### B. Dismissal Under Rule 12(b)(2) for Lack of Personal Jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction over a defendant. Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008). Personal jurisdiction in federal court must comport with Rule 4(k) of the Federal Rules of Civil Procedure, as well as with federal due process. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004). The long-arm statute of the state in which the district court sits must be applied when determining whether the court has jurisdiction over out-of-state defendants. Id. at 800 (citing Fed. R. Civ. P. 4(k)(1)(A)). The California long-arm statute is coextensive with federal due process, so in this Court, personal jurisdiction analysis consists solely of federal due process analysis. Id. at 800–01. The overarching framework for personal jurisdiction asks whether the defendant has minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

A plaintiff need only make a prima facie showing of jurisdictional facts to avoid the granting of a motion to dismiss. See Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995). "Uncontroverted allegations in [Plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [Plaintiff's] favor." See Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010).

### C. Motion to Dismiss for Improper Venue or to Transfer

District courts have discretion to adjudicate motions to dismiss or transfer according to an "individualized, case-by-case consideration of convenience and fairness." See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (internal citations omitted). District courts will dismiss an action if venue is improper. See Fed. R. Civ. P. 12(b)(3); Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). However, if venue is proper, then the moving party can establish that the case should be transferred to another

5

1 district by showing (1) "that the transferee district is one where the action might have been
2 brought;" and (2) "that the transfer will serve the convenience of the parties and witnesses
3 and will promote the interests of justice." See Clip Ventures LLC v. U-Dig-It Enters., Inc.,
4 No. 10-3227, 2010 WL 4269199, at *1 (N.D. Cal. Oct. 25, 2010) (citing Goodyear Tire &
5 Rubber Co. V. McDonnell Douglas Corp., 820 F. Supp. 503, 506 (C.D. Cal. 1992)).

### III. DISCUSSION

Lester makes three main arguments for dismissal: (A) the FAC fails to state a claim by suing him personally, as he is the wrong party; (B) the FAC fails to allege any basis for the Court to exercise personal jurisdiction; and (C) venue is improper. See generally Lester's MTD. Napster.fm, LLC also moves to dismiss for lack of personal jurisdiction and improper venue. See generally Napster.fm, LLC's MTD. Alternatively, Defendants move to transfer the suit to the Eastern District of Virginia. See Lester's MTD at 15; Napster.fm, LLC's MTD at 14.

### A. Plaintiff States a Claim for Relief Under Rule 12(b)(6)

Lester argues that Plaintiff fails to state a claim for relief because he is the wrong party and thus he cannot be liable for the alleged misconduct or provide the requested relief. See Lester's MTD at 9. Lester contends that he "does not own the domain name Napster.fm, nor own the U.S. Trademark Application Serial No. 86/069,735, nor own, operate, or maintain the website at said domain, and has not conducted any of the acts complained of" by Plaintiff. Id. To support his argument, Lester cites the copyright notice at the bottom of the Napster.fm website and communications with Plaintiff as evidence that Napster.fm, LLC, and not Lester, is the owner of the domain name and website. Id. at 9-10. This contention is not only unavailing in light of Plaintiff's numerous allegations related to Lester's wrongdoing as an individual, but it contradicts Lester's own characterizations of Napster.fm and Napster.fm, LLC.

Lester is the President and CEO of Napster.fm, LLC. See Lester Decl. ¶ 7 (dkt. 7-2). Lester and Napster.fm, LLC share a permanent address at 2401 Gallows Tree Court, Vienna, Virginia 22182. See FAC ¶ 23. The registrar of the domain name Napster.fm lists the

1  "Registrant Name," "Admin Name," and "Tech Name" as Ryan Lester, and the "Registrant
2  Organization," "Admin Organization," and "Tech Organization" as Napster.fm, LLC.  See
3  id. ¶ 23; see also Lester's MTD, Exh. A at 2 (dkt. 7-3).  At all times prior to the lawsuit,
4  Lester referred to Napster.fm as "my service" and to Napster.fm, LLC as "my company."
5  See, e.g., Lester's MTD, Exh. C.  In addition, Lester's initial trademark application explicitly
6  lists Lester, as an individual, as the owner of Trademark Application Serial No. 86/069,735.
7  See FAC, Exh. F (PTO Form 1478, Trademark/Service Mark Application, Principal
8  Register) (listing "Lester, Ryan" as "Owner of Mark" and listing the "Legal Entity Type" as
9  "individual").[3]  Accordingly, Lester's attempt to dispute the control he exercises over
10 Napster.fm is unpersuasive, as he took down the website after the first letter from Plaintiff's
11 counsel, offered to sell the domain name to Plaintiff, and filed a trademark application in his
12 own name for the website.[4]

13      Next, Lester argues that Plaintiff fails to plead any factual content regarding Lester's
14 conduct that would allow the Court to draw a reasonable inference that Lester is liable for the
15 misconduct alleged.  See Lester's MTD at 10.  In support of this contention, Lester again
16 attempts to hide behind Napster.fm, LLC to show why he cannot be liable.  Id.  The FAC
17 contains a thorough factual description that Defendants: (1) operate a website with a domain
18 name nearly identical to Plaintiff's famous and federally registered trademark; (2) demanded
19 three quarters of a million dollars from Plaintiff for their infringing domain; (3) continue to
20 dilute Plaintiff's mark through free music sharing; and (4) intend to continue the infringing
21 conduct and to appropriate the goodwill associated with Plaintiff's mark through their
22 application to register Napster.fm and opposition to Plaintiff's trademark application.  See
23 FAC ¶¶ 1-4.  Therefore, the Court finds that Plaintiff has pled sufficient facts to indicate that
24 its claims for trademark infringement, dilution, cybersquatting, unfair competition, and unfair

---

[3] In the PTO's January 2014 letter, the applicant is listed as "Napster.fm, LLC."  See FAC, Exh. G at 3.  As the initial application lists Lester individually as the owner, it appears that the owner of the application has been changed since September 2013.

[4] Lester has also held himself out as the owner of the domain name and website to the media. See FAC ¶¶ 24-26, 28; see also Cincone Decl., Exhs. 1-3 (attaching copies of the TechCrunch and thepowerbase.com articles in which Lester is interviewed).

7

business practices are plausible on their face and support a cognizable legal theory. See Iqbal, 556 U.S. at 663.[5]

## B. Plaintiff Makes a Prima Facie Showing of Personal Jurisdiction

Personal jurisdiction can be either "general" or "specific." See Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). Plaintiff does not differentiate between the two for the purposes of establishing personal jurisdiction, thus the Court will analyze both types.

Under general jurisdiction, a court may assert personal jurisdiction as to any cause of action filed against a defendant whose activities within the forum are "substantial" or "continuous and systematic," regardless of whether the cause of action is related to the defendant's activities in the state. Id. Defendants assert that they are domiciled in Virginia, conduct no business in the state of California, own no property in California, and lack any existing connections to California.[6] See Lester's MTD at 12-13; Napster.fm, LLC's MTD at 11. As Plaintiff does not argue why general jurisdiction is proper, Plaintiff has failed to establish that the Court may exercise general jurisdiction over Defendants.

For a court to exercise specific jurisdiction, due process requires that the defendant have minimum contacts with the forum such that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. See Schwarzenegger, 374 F.3d at 801. Whether a party has minimum contacts with a forum sufficient to warrant the exercise of specific personal jurisdiction turns on a three-prong test:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

---

[5] Lester does not argue that Plaintiff fails to plead specific elements of the alleged causes of action. Rather, he generally asserts that Plaintiff lacks sufficient factual allegations to state a claim against him personally.

[6] Lester temporarily lived in California and worked as a Temporary Intern for Space X Corporation from June 2012 to October 2013. See Lester Decl. ¶ 6. Plaintiff does not rely on Lester's time in California to establish personal jurisdiction.

8

  (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

  (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Brayton Purcell LLP, 606 F.3d at 1128 (quoting Schwarzenegger, 374 F.3d at 802). The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." See Boschetto, 539 F.3d at 1016 (citing Schwarzenegger, 374 F.3d at 802). However, if the plaintiff fails to establish the first two prongs, then "the jurisdictional inquiry ends and the case must be dismissed." Id. (citing Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006)).

  The Ninth Circuit has developed a framework for analyzing specific jurisdiction in the Internet Age. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). "[O]peration of a passive website is not adequate to establish personal jurisdiction over a defendant, whereas operation of an interactive, commercial website is often sufficient." See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir.1997). If a website falls somewhere in between passive and interactive, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." Id. at 419. Courts have found that "doing nothing other than registering a domain name and posting an essentially passive website" is inadequate for personal jurisdiction. See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156–57 (9th Cir. 2006); Cybersell, 130 F.3d at 418–20. However, where a website is used for financial gain, this Court has found that the exercise of personal jurisdiction is appropriate. See Quigley v. Guvera IP Pty Ltd., No. 10-3569, 2010 WL 5300867, at *3 (N.D. Cal. Dec. 20, 2010) (citing Panavision, 141 F.3d at 1321 (scheme to induce plaintiff to pay defendant for rights to the domain name)).

/ / /

/ / /

/ / /

9

### 1. Purposeful Direction

In tort claims,[7] purposeful direction is assessed under the "<u>Calder</u> effects" test, which "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." See <u>Brayton Purcell LLP</u>, 606 F.3d at 1128 (citing <u>Calder v. Jones</u>, 465 U.S. 783 (1984)). The <u>Calder</u> test requires "something more" than mere foreseeability; the effects in the third prong must be expressly aimed at the forum state. See <u>Pebble Beach</u>, 453 F.3d at 1156. However, the "'express aiming' analysis depends, to a significant degree, on the specific type of tort at issue." See <u>Schwarzenegger</u>, 374 F.3d at 807.

#### i. Intentional Act

The "intentional act" element is satisfied where a defendant acts with "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." <u>Id.</u> at 806. Here, Defendants committed an intentional act when they created a domain name and website that allegedly infringed on Plaintiff's trademark to demand money from Plaintiff. See <u>Brayton Purcell LLP</u>, 606 F.3d at 1128-29 (citing <u>Rio Props., Inc. v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1020 (9th Cir. 2002) (operating a passive website is an intentional act under <u>Calder</u>)); <u>Bancroft & Masters, Inc. v. Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1088 (9th Cir. 2000) (sending a letter is an intentional act).

#### ii. Express Aiming

In their briefs and again at oral argument, Defendants rely on <u>Schwarzenegger</u> to argue that this Court lacks personal jurisdiction, particularly based on the express aiming element. See Napster.fm, LLC's Motion at 12. In <u>Schwarzenegger</u>, the Ninth Circuit analyzed whether an advertisement containing an unauthorized photograph of the plaintiff, printed in a local Ohio-based newspaper and never circulated outside of Ohio, could establish

---

[7] Plaintiff alleges claims arising out of trademark infringement, dilution, and cybersquatting, which are generally considered to be grounded in tort. See <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1322 (9th Cir. 1998); <u>Groupion, LLC v. Groupon, Inc.</u>, No. 11-870, 2012 WL 2054993, at *6 (N.D. Cal. June 5, 2012). Under the first requirement for specific jurisdiction, purposeful direction analysis is often used in suits sounding in tort, while purposeful availment analysis is used in suits grounded in contract. See <u>Schwarzenegger</u>, 374 F.3d at 802.

1 specific jurisdiction in California. See 374 F.3d at 799. The Ninth Circuit affirmed the
2 dismissal for lack of personal jurisdiction because the defendant's intentional act in creating
3 and publishing the advertisement was expressly aimed at Ohio and not California. Id. at 807
4 ("The Advertisement was never circulated in California, and Fred Martin had no reason to
5 believe that any Californians would see it . . . Fred Martin's express aim was local."").
6 Defense counsel asserted at oral argument here that Schwarzenegger involved a website as
7 the basis for jurisdiction. Although the Ninth Circuit mentioned that the defendant in
8 Schwarzenegger maintained an internet website available for viewing in California, it did not
9 rely on this fact at all in its analysis, as the alleged misconduct appeared solely in the printed
10 advertisements. See 374 F.3d at 799, 806-07. Accordingly, Schwarzenegger is not
11 applicable to the Court's analysis of the Calder effects test in the internet context.

12 Defense counsel also referenced Cybersell at oral argument, in order to support the
13 argument that Napster.fm is merely a passive website that cannot serve to establish specific
14 jurisdiction. In Cybersell, the Ninth Circuit assessed whether a purely passive website that
15 allegedly infringed the plaintiff's federally registered mark, without any other evidence of
16 purposeful direction, could establish specific jurisdiction. See 130 F.3d at 415. There, the
17 Ninth Circuit refused to find personal jurisdiction in the absence of "'something more' to
18 indicate that the defendant purposefully (albeit electronically) directed his activity in a
19 substantial way to the forum state." Id. at 418.

20 It is well established that "maintenance of a passive website alone cannot satisfy the
21 express aiming prong." See Brayton Purcell LLP, 606 F.3d at 1129. Unlike Cybersell,
22 however, Napster.fm is not merely a passive website containing an advertisement.
23 Conversely, Napster.fm is an interactive website that requires users to register and create user
24 names before accessing the music files.[8] See McMahon Decl. ¶ 2 (dkt. 24-7); see also
25 Cybersell, 130 F.3d at 418 (describing that "users can exchange information with the host

---

[8] In an April 14, 2013 interview with the blog TechCrunch, Lester describes that Napster.fm allows users to interact not only with the host computer, but with each other through the website's social functions. See Cincone Decl., Exh. 2 at 3 (dkt. 24-4) (where Lester notes that Napster.fm "adds a few unique features of its own like syncing music between users in real-time. . . . Napster had a cool social element which hadn't really been precisely replicated by new services until [Napster.fm] showed up.")

11

1  computer when the site is interactive."). Although Plaintiff conceded at oral argument that
2  the current website is not commercial, as users subscribe to and download music for free,
3  Napster.fm is still not so passive as to fall under Cybersell.

4  Moreover, Plaintiff's counsel explained at oral argument that Plaintiff does not allege
5  personal jurisdiction because of Defendants' website, but because of cybersquatting. In
6  Panavision, the Ninth Circuit found specific jurisdiction of a non-resident defendant where
7  he sought to extort $13,000 for the sale of his infringing domain name. See generally 141
8  F.3d 1316; see also Groupion, LLC v. Groupon, Inc., No. 11-870, 2012 WL 2054993, at *5
9  (N.D. Cal. June 5, 2012) (finding specific jurisdiction where the cybersquatting defendant
10 intentionally registered domain names in a scheme to extort money from Groupon and thus
11 expressly aimed intentional acts at and caused harm in California, where Groupon has offices
12 and conducts business).

13 The Court agrees that this case is more akin to Panavision and Groupion. Plaintiff
14 alleges that Defendants intentionally chose Plaintiff's trademark in order to grab the public's
15 attention and increase the popularity of their website. See FAC ¶¶ 24-26, 28. Defendants
16 then allegedly used the domain name in "a bad faith effort to unfairly reap profits from
17 [Plaintiff's] trademark." Id. ¶ 30. Defendants have demanded $775,000 from Plaintiff,[9]
18 almost sixty times the amount that the Ninth Circuit deemed extortionate in Panavision.[10] Id.
19 Since this offer, Defendants have continued to direct their injurious activities toward
20 Plaintiff in California, including applying for a federal trademark for Napster.fm, opposing
21 Plaintiff's preexisting trademark application, and re-launching the allegedly infringing
22 Napster.fm service. See id. ¶¶ 31-34; see also Bancroft & Masters, Inc., 223 F.3d at 1088
23 (stating that the "express aiming" standard is satisfied when "individual targeting" is
24 present).

---

[9] The parties disagree about the context of the offer, but even taking all facts in the light most favorable to Defendants, Defendants' offer supports a finding of jurisdiction.

[10] In their briefs and again at oral argument, Defendants represented that they based this amount on expert opinion on the value of the domain name. See Napster.fm, LLC's MTD at 6; Lester's Reply at 2 (dkt. 25). Even accepting this as true, it does not negate the possibility of cybersquatting. Indeed, it is puzzling why a non-infringing domain name would be valued so highly.

### iii. Foreseeable Harm

The third prong of the Calder test, requiring that a defendant know that harm will be suffered in the forum state, is satisfied when a defendant's intentional act has "foreseeable effects" in the forum. See Brayton Purcell LLP, 606 F.3d at 1131. After Plaintiff's counsel wrote to Lester in April 2013, Defendants had notice of both Plaintiff's ownership rights in the Napster trademark and Plaintiff's presence in California. It was foreseeable that Plaintiff would be harmed by the infringement of its trademark, and that some of this harm would occur in California, where Defendants knew that Plaintiff has offices. As in Panavision, Defendants' "conduct, as [they] knew it likely would, had the effect of injuring [Plaintiff] in California." See 141 F.3d at 1322. Accordingly, the "something more" required by Calder has been met and the first requirement for specific jurisdiction is satisfied.

### 2. Arising Out of or Related to Forum Activities

The second requirement for specific jurisdiction is that a plaintiff's claim arises out of or relates to the defendant's activities in the forum. See Panavision, 141 F.3d at 1320. The Ninth Circuit had adopted the "'but for' test to determine whether a particular claim arises out of forum-related activities." See Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). Thus, a claim meets this requirement if the injury to the plaintiff would not have occurred "but for" the defendant's forum-related activity. See id.; Panavision, 141 F.3d at 1322.

Plaintiff alleges that Defendants' use of the Napster name and mark has deprived it of its rights to control and use its trademark, created a likelihood of confusion and deception among consumers, caused the public to falsely associate Plaintiff with Defendants or vice versa, caused irreparable damage to Plaintiff's goodwill and diluted its trademark, and caused Plaintiff to lose sales of its genuine trademark products and services. See FAC ¶ 37. Defendants' alleged contacts with the forum are infringement on Plaintiff's trademark and cybersquatting, without which Plaintiff would not have suffered the alleged injury. Accordingly, the second requirement for specific jurisdiction is satisfied.

/ / /

/ / /

13

### 3. Reasonableness of Exercising Jurisdiction

The third prong for establishing specific jurisdiction provides that the exercise of jurisdiction must be reasonable. See Panavision, 141 F.3d at 1322. The factors to be balanced when considering reasonableness are: (1) the extent of the defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–77 (1985)). Further, the defendant must demonstrate that the "inconvenience is so great as to constitute a deprivation of due process." Id. at 1323.

The burden is on the defendant to present a compelling case that jurisdiction is unreasonable. See Schwarzenegger, 374 F.3d at 802. Defendants do not address any of the Burger King factors or otherwise analyze the reasonableness prong, other than to say that the action generally works as a "disadvantage" and "inconvenience" to them. See Lester's MTD at 10; Napster.fm, LLC's MTD at 9; Lester Decl. ¶ 24. Defendants simply note that "since Plaintiff has failed to satisfy either of the first two prongs, personal jurisdiction is not established in the state of California." See Lester's MTD at 14; Napster.fm, LLC's MTD at 12-13. Thus, Defendants fail to carry their burden to show that jurisdiction is unreasonable in violation of due process.[11]

---

[11] In any case, Panavision demonstrates that the Burger King factors weigh in favor of Plaintiff. Panavision found that the defendant's purposeful interjection into the jurisdiction was substantial when he registered the plaintiff's trademarks as his domain name, knowing that it would likely injure the plaintiff in California, and sent a letter to the plaintiff demanding $13,000. See 141 F.3d at 1323. Although the burden on Lester as an individual living in Virginia to litigate in California is significant, the inconvenience is not so great as to deprive him of due process, especially in the age of email and air travel. Id. The sovereignty factor weighs in favor of Plaintiff as four of its six causes of action arise under federal statutes, which require the same analysis in either California or Virginia. As to the forum state's interest, "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured." Id. (quoting Gordy v. Daily News, L.P., 95 F.3d 829, 836 (9th Cir. 1996)). As California is the location of Plaintiff's second largest office and the majority of Plaintiff's Legal Department, this factor weighs in favor of Plaintiff. See Reagan Decl. ¶ 3-4 (dkt. 24-1). The efficient resolution factor looks to the location of the evidence and witnesses. See Panavision, 141 F.3d at 1323. All of Plaintiff's brand and trademark enforcement, including enforcement of its Napster trademark, is

### C.     Dismissal and Transfer Are Inappropriate

In cases where subject matter jurisdiction is not based solely on diversity of citizenship, venue is proper in a judicial district if "a substantial part of the events or omissions giving rise to the claim occurred" in that district. See Myers v. Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001) (citing 28 U.S.C. § 1391(b)). "In tort and tort-like actions, the location where the plaintiff felt the injury is generally a proper venue." See Sung v. Bussio, No. 13-1786, 2013 WL 6086030, at *5 (N.D. Cal. Nov. 19, 2013) (citing Myers, 238 F.3d at 1076). Here, Plaintiff allegedly suffered trademark infringement, a loss of goodwill, and consumer confusion in the Northern District, and thus this is an appropriate venue. See Plaintiff's Opposition to Lester's MTD at 6 (dkt. 24).

Defendants also move to transfer the case to the Eastern District of Virginia, where Defendants are domiciled. A court "may transfer any civil action to any other district or division where it might have been brought" for the "convenience of the parties and witness" and "in the interest of justice." See 28 U.S.C. § 1404(a). As Plaintiff could have brought the case in Virginia, "the only issue is whether the [C]ourt should transfer the case based upon convenience and fairness." See Sung, 2013 WL 6086030, at *5 (citing Jones, 211 F.3d at 498-499). However, a motion to transfer should not merely shift the inconvenience from the moving party to the opposing party. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Barnes & Noble, Inc. v. LSI Corp. 823 F. Supp. 2d 980, 994 (N.D. Cal. 2011).

The Ninth Circuit has enumerated factors that courts may consider in determining whether transfer under section 1404(a) is appropriate, including: (1) the location where the relevant agreements were negotiated and took place; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of

---

managed out of its California office. See Reagan Decl. ¶ 5. The convenience of the plaintiff factor, though generally given little weight, also weighs in favor of Plaintiff.

15

compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. See Jones, 211 F.3d at 498-99 (citing Stewart Org. v. Ricoh Corp, 487 U.S. 22, 29-31 (1988)); see also Vu v. Ortho-McNeil Pham. Inc., 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009).

A plaintiff's choice of forum is generally afforded substantial weight, such that a "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice." See Decker Coal, 805 F.2d at 843. Here, Lester does not address any of the Jones factors, but argues that transfer is warranted because "Defendant is an individual residing in Virginia and Plaintiff is a large multi-national corporation operating throughout the USA and many foreign countries." See Lester's MTD at 15; see also Napster.fm, LLC's MTD at 15 ("Rhapsody chose this forum merely to further harass, and cause injury and undue expense to NapsterFM LLC as well as the other Defendant Lester."). Defendants' main argument seems to be that transfer is appropriate "for the convenience of the parties, particularly NapsterFM LLC, as well as Lester." See Napster.fm, LLC's MTD at 15. Without more, this rationale is insufficient to overcome the significant weight afforded to Plaintiff's choice of forum.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES both motions.

**IT IS SO ORDERED.**

Dated: February 24, 2014

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE